```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
KRISTOPHER PEREZ,

                        Plaintiff,
                                                              MEMORANDUM & ORDER
             - against -                                         22-CV-4545 (PKC)

COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.
----------------------------------------------------------x
```

PAMELA K. CHEN, United States District Judge:

Plaintiff Kristopher Perez, proceeding *pro se*, filed this action pursuant to 42 U.S.C. § 1383(c)(3) on August 2, 2022.[1] (Compl., Dkt. 1 (hereinafter "Dkt. 1").) Plaintiff challenges the Social Security Administration's ("SSA") determination of his claim, which denied his claim for Supplemental Security Income ("SSI"). (Dkt. 1, at ECF 1[2]; Administrative Transcript ("Tr.")[3], at 15–16.) On December 22, 2022, the Acting Commissioner of Social Security ("Commissioner") moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) to affirm the SSA's denial of SSI benefits to Plaintiff. (Dkt. 9; Dkt. 9-1, at 1.) For the reasons explained below, the Court denies the Commissioner's motion. This case is remanded for further proceedings consistent with this Memorandum and Order.

---

[1] 42 U.S.C. § 1383(c)(3) renders final determinations of claims for Supplemental Security Income subject to the same judicial review provisions as 42 U.S.C. § 405(g).

[2] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

[3] All references to "Tr." refer to the consecutively paginated Administrative Transcript (*see* Dkt. 8), and not to the internal pagination of the constituent documents.

1

# BACKGROUND

## I. Procedural History

Plaintiff applied for SSI on August 8, 2019, alleging a disability onset date of February 5, 2017. (Tr. 15.) The claim was initially denied on January 2, 2020, and upon reconsideration, denied again on October 9, 2020. (*Id.*) Plaintiff filed a written request for a hearing, and Administrative Law Judge ("ALJ") Robert R. Schriver held a telephonic hearing on May 4, 2021. (*Id.*; Tr. 25.) At the conclusion of the hearing, the ALJ held the record open for Plaintiff to submit additional school records. (Tr. 15; Tr. 38.) However, Plaintiff did not submit any additional records, so on July 30, 2021, the ALJ sent a letter to Plaintiff's representative, stating that the record would be closed and a decision rendered if Plaintiff did not submit the records or request more time within ten days. (Tr. 331.) Plaintiff did not respond and the record was accordingly closed. (Tr. 15.)

The ALJ found that Plaintiff was not disabled within the meaning of the Act in a decision dated September 10, 2021. (Tr. 25.) Plaintiff requested a review of the ALJ's decision, which the Appeals Council received on October 20, 2021 (Tr. 5) and denied on May 27, 2022 (Tr. 1). Based upon the denial, Plaintiff filed this action, seeking reversal or remand of ALJ Schriver's determination. (Dkt. 1, at ECF 3.)[4]

---

[4] 42 U.S.C. § 1383(c)(3) provides that "[t]he final determination of the Commissioner of Social Security after a hearing . . . shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title." 42 U.S.C. § 1383(c)(3). According to 42 U.S.C. § 405(g):

> Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party . . . may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow.

2

## II. ALJ Hearing

On May 4, 2021, Plaintiff appeared at the telephonic hearing before ALJ Schriver with a non-attorney representative, Vianka Colon ("Colon"). (Tr. 31.) The ALJ heard testimony from Plaintiff, Plaintiff's mother, and vocational expert Diamond Warren (the "VE"). (Tr. 31–63.)

### A. Plaintiff's Testimony

Plaintiff was born in 1995. (Tr. 33.) He graduated from high school and has some college education. (Tr. 41.) Plaintiff stopped attending college because he "felt like [he] didn't get the respect [he] deserved in school[.]" (Tr. 41.) Plaintiff reported not having any trouble with the "learning material" (Tr. 44); rather, he struggled with the social aspects. Students bullied him, including one who allegedly tried to follow him home from class. (Tr. 42.) Plaintiff reported having a similar experience in high school, with students—and even a teacher—verbally and physically bullying him. (Tr. 42–43.) Plaintiff had not "socialized with anyone in a long time" and did not expect to in the near future. (*See* Tr. 44–45.)

---

42 U.S.C. § 405(g). "Under the applicable regulations, the mailing of the final decision is presumed received five days after it is dated unless the [plaintiff] makes a reasonable showing to the contrary." *Kesoglides v. Comm'r of Soc. Sec.*, No. 13-CV-4724 (PKC), 2015 WL 1439862, at *3 (E.D.N.Y. Mar. 27, 2015) (citing 20 C.F.R. §§ 404.981, 422.210(c)).

The SSA's final decision was issued May 27, 2022 (Tr. 1), and the Complaint was filed on August 2, 2022 (Dkt. 1), 62 days after the presumed receipt of the decision, rendering this appeal untimely. However, the Commissioner did not raise the timeliness of Plaintiff's appeal in her motion for judgment on the pleadings (*see generally* Dkt. 9) and has therefore waived the argument. *See Janas v. Barnhart*, 451 F. Supp. 2d 483, 486 n.2 (W.D.N.Y. 2006) (deeming the plaintiff's action filed 62 days after presumed receipt of the Commissioner's final decision timely and explaining that the Act's 60-day time limit is "not jurisdictional"—but rather "a period of limitations" that is waivable if not asserted by the Commissioner); *Weinberger v. Salfi*, 422 U.S. 749, 763–64 (1975) (discussing jurisdictional question in the context of Section 405(g) actions); *Davis v. Bryan*, 810 F.2d 42, 44–45 (2d Cir. 1987) ("If a defendant fails to assert the statute of limitations defense, the district court ordinarily should not raise it *sua sponte*.").

3

Plaintiff explained that he generally feels nervous and anxious when he "interact[s] with other people," which causes him to break into a cold sweat. (Tr. 44.) Plaintiff reported that even during the hearing, his hands were cold. (*Id.*) At the beginning of the hearing, Plaintiff warned the ALJ that he "might need to have the same questions or sentence repeated because sometimes . . . . I can't hear what people say sometimes. Like, sometimes I need to have the same phrase repeated like 10 times. . . . Like, I'm trying to figure out what people want from me, so I answer what they want to hear." (Tr. 39.) During the hearing, Plaintiff's responses to questions were sometimes illogical or tangential. For example, Plaintiff gave the following response to the question, "what would a bad day look like, just generally?":

> Oh, well, if it's—if I have to do something important, I would try to calm myself down, and I might rotate back and forth, but I would try to stay calm, as calm as possible, and I would try to think about what I'm trying to do before I actually do it so I don't make any big mistakes, like maybe say the wrong thing, fall down the stairs or something. I don't normally fall down the stairs, but I'm just giving you an example of what I'm trying to prevent on a bad day.

(Tr. 45–46.)

When asked about his ability to work at a full-time job, Plaintiff testified that he finds "working with others . . . really difficult" and gave the following example:

> [I]f I had to work in Rite Aid as a cashier, I would feel sort of nervous, because I wouldn't know who I would see the next day, and then sometimes some customers, they tend to cause trouble. I've heard screaming at the cashier, . . . . and that would probably make me uncomfortable, make me possibly angry, and I don't think I would hit the person, but maybe I might.

(Tr. 54.) Regarding working with a supervisor, Plaintiff testified:

> Whenever I have to deal with someone who's evaluating me or observing me for an important reason, I try to not—I try to think that they're not there, because when I remember them, I get really nervous. . . . [B]ut I still feel very nervous whenever I have to do something alone. And whenever someone's like observing me, then I try to—because I don't want to—I get nervous about making mistakes.

4

(Tr. 55.)  Plaintiff concluded his testimony by stating that he thought he could concentrate for at least an hour and that his memory was the "same as maybe everyone else's."  (Tr. 55–56.)

### B. Plaintiff's Mother's Testimony

Plaintiff's mother testified through a Spanish-language interpreter.  (Tr. 34.)  Colon asked Plaintiff's mother what prompted her to "get help for [Plaintiff]?"  (Tr. 56.)  Plaintiff's mother began by explaining that at around age three, Plaintiff was sent to a special school where he needed to be taught to play and interact with other children.  (Tr. 57.)  She recalled that between middle school to high school, he seemed to be doing well, but at around age 16 and 17, he developed very sensitive hearing and did not want to go to school alone.  (*Id.*)  At that point, the ALJ abruptly interrupted Plaintiff's mother's testimony, explaining that he "[didn't] need to hear [Plaintiff's] entire life history" or about "his difficulties in high school"—just "what his function is today[.]"  (Tr. 57.)

Colon then asked Plaintiff's mother about why Plaintiff could not hold a full-time job.  (Tr. 58.)  She explained that Plaintiff became very aggressive around the same time he dropped out of college, and that when he felt pressured, he had outbursts that made her "very scared."  (Tr. 58–59.)  At that point, the ALJ cut Plaintiff's mother off again: "Okay, hold on.  Hold on.  No, stop, stop, stop.  Ms. Colon, do we have any further relevant testimony because she's just talking and talking and talking and talking."[5]  (Tr. 59.)  Colon responded that she did not have any further questions for Plaintiff's mother.  (*Id.*)

---

[5] The mother's testimony consumed less than three, double-spaced pages of transcript.  (Tr. 57–59.)

### C. Vocational Expert

The ALJ asked the VE to consider a hypothetical individual who was the same age and education level as Plaintiff, with no past relevant work, no exertional limitations, that required a "fixed work routine," could have "only occasional interaction with supervisors or coworkers, and no interaction with the general public." (Tr. 60.) The VE responded that such an individual could work as a hospital cleaner, an industrial cleaner, or a hand packer. (*Id.*) The ALJ then asked for sedentary positions, and the VE responded with document preparer, final assembler, and sorter. (Tr. 60–61.)

Colon then asked the VE:

> Please consider an individual with the age, education of the Claimant, and no past relevant work who, in addition, is limited to working in a low-stress job with limited decision-making, and no more than one to two-step processes. He would require repetition of instruction, [] individualized attention from a supervisor or other coworkers to perform new tasks[,] . . . would only be limited to occasional interaction with coworkers and supervisors, and . . . is not able to maintain attention for extended periods of two hours, so he would be off-task up to 15 percent of the workday.

(Tr. 61.) The VE responded that there were no jobs in the national economy for such a hypothetical person. (*Id.*)

### III. ALJ Holds Record Open For Additional School Records

During the hearing, the ALJ asked Colon whether Plaintiff still needed to submit more records. (Tr. 38.) Colon informed the ALJ that Plaintiff's special education school records were delayed by about a month, and the ALJ agreed to hold the record open "for an additional 30 days after [the] hearing" for submission of those records. (*Id.*)

On June 3, 2021, an SSA Hearing Officer contacted Colon "to follow up on [the] outstanding school records[,]" but received no response and was unable to leave a message because her voicemail was full. (Tr. 329.) On June 25, 2021, the SSA attempted to call Colon again but

6

still could not reach her. (Tr. 330.) Finally, ALJ Schriver sent a letter to Colon, dated July 30, 2021, informing her that if she did not send the additional evidence or request additional time within ten days of the letter, he would close the record and render his decision. (Tr. 331.)

## IV.     ALJ Decision

The Court first explains the ALJ's five-step inquiry for evaluating disability claims. The plaintiff bears the burden of proof at the first four steps of the inquiry; the Commissioner bears the burden at the final step. *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citation omitted). First, the ALJ determines whether the plaintiff is currently engaged in "substantial gainful activity." 20 C.F.R. § 416.920(a)(4)(i). If the answer is yes, the plaintiff is not disabled. *Id.* If the answer is no, the ALJ proceeds to the second step to determine whether the plaintiff suffers from a severe impairment. *Id.* § 416.920(a)(4)(ii). An impairment is severe when it "significantly limit[s] [the plaintiff's] physical or mental ability to do basic work activities." *Id.* § 416.922(a). If the plaintiff does not suffer from an impairment or combination of impairments that is severe, then the plaintiff is not disabled. *Id.* § 416.920(a)(4)(ii). But if the plaintiff does suffer from an impairment or combination of impairments that is severe, then the ALJ proceeds to the third step and considers whether it meets or medically equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"). *Id.* § 416.920(a)(4)(iii); *id.* pt. 404, subpt. P, app. 1. If the ALJ determines at step three that the plaintiff has one of the listed impairments, then the ALJ will find that the plaintiff is disabled under the Act. *Id.* § 416.920(a)(4)(iii). On the other hand, if the plaintiff does not have a listed impairment, the ALJ must determine the plaintiff's residual functional capacity ("RFC") before continuing on to steps four and five. To determine the plaintiff's RFC, the ALJ must consider the plaintiff's "impairment(s), and any related symptoms . . . [that] may cause physical and mental limitations that affect what [the plaintiff] can do in a work setting." *Id.* § 416.945(a)(1). The ALJ will then use the RFC finding in step four to

determine if the plaintiff can perform past relevant work. *Id.* § 416.920(a)(4)(iv). If the answer is yes, the plaintiff is not disabled. *Id.* Otherwise, the ALJ will proceed to step five and determine whether the plaintiff, given their RFC, age, education, and work experience, has the capacity to perform other substantial gainful work in the national economy. *Id.* § 416.920(a)(4)(v). If the answer is yes, the claimant is not disabled; otherwise, the claimant is disabled and is entitled to benefits. *Id.*

Here, at step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 8, 2019; i.e., Plaintiff's application date. (Tr. 17.) At step two, the ALJ found that Plaintiff had the following severe impairments: autism spectrum disorder, anxiety disorder, and intermittent explosive disorder. (Tr. 17–18.)

At the third step, the ALJ determined that none of Plaintiff's impairments met or medically equaled the severity of any of the impairments in the Listings. (Tr. 18–20.) Specifically, the ALJ found that Plaintiff had no limitation in understanding, remembering, or applying information. (Tr. 18.) To support this finding, the ALJ noted that Plaintiff was able to use public transportation, read, play games, and prepare simple meals. (*Id.*) Moreover, he noted that Plaintiff "was able to understand questions asked of him at the hearing and competently answered them." (Tr. 19.) ALJ Schriver found that Plaintiff had a moderate limitation in interacting with others. (*Id.*) With regard to concentrating, persisting, and maintaining pace, the ALJ found that Plaintiff had no limitation. (*Id.*) As support, ALJ Schriver pointed to Plaintiff's ability to "watch television, use the computer, and complete some college courses" as supporting evidence. (*Id.*) The ALJ also noted that Plaintiff was able to "keep up with the pace of questioning and maintain sufficient concentration" during the 30-minute hearing. (*Id.*) Lastly, the ALJ found that Plaintiff had a moderate limitation for adapting or managing himself. (*Id.*) Specifically, the ALJ noted that psychological examiners

8

had found that Plaintiff would "have difficulty adapting to a complex work routine, [but] could manage work with a fixed routine." (Tr. 20.)

The ALJ accordingly proceeded to determine Plaintiff's RFC and found that Plaintiff maintained the RFC "to perform a full range of work at all exertional levels, but that he requires a fixed work routine, with only occasional interaction with supervisors and coworkers, and no interaction with the general public." (*Id.*)  The ALJ considered the medical opinions of two state-agency psychological consultants, S. Shapiro, Ph.D., and H. Rozelman, Ph.D. (Tr. 22); a February 2017 autism evaluation with Gus Papapetrou, Ph.D. (Tr. 22);[6] a December 2019 psychological consultative evaluation with Mentwab Wuhib, Ph.D. at the request of the SSA (Tr. 22); and a October 2020 psychological consultative evaluation with Natalie Ochoa-Jimenez, Psy.D at the request of the SSA (Tr. 23).

At step five, the ALJ concluded that, considering Plaintiff's age, education, work experience, and RFC, Plaintiff could perform "jobs that exist in significant numbers in the national economy[,]" including hospital cleaner, industrial cleaner, and hand packer. (Tr. 23–24.)  The ALJ accordingly concluded that Plaintiff was not disabled. (Tr. 24.)

## STANDARD OF REVIEW

Unsuccessful claimants for benefits under the Act may bring an action in federal district court seeking judicial review of the Commissioner's denial of benefits.  42 U.S.C. §§ 405(g) and 1383(c)(3).  "In reviewing a final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision."  *Agolli v. Comm'r of Soc. Sec.*, No. 20-CV-5369 (MKB), 2023 WL 6050096, at *3

---

[6] The Court notes ALJ Schriver erred in characterizing Dr. Papapetrou's evaluation as occurring in February 2017—the evaluation actually occurred on March 20, 2019. (*Compare* Tr. 22 *with* Tr. 380.)

9

(E.D.N.Y. Sept. 15, 2023) (quoting *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004), *as amended on reh'g in part*, 416 F.3d 101 (2d Cir. 2005)). "Courts review de novo whether the correct legal principles were applied and whether the legal conclusions made by the [ALJ] were based on those principles." *Coulter v. Comm'r of Soc. Sec.*, --- F. Supp. 3d ----, 2023 WL 3346505, at *1 (S.D.N.Y. 2023); *see also Douglass v. Astrue*, 496 F. App'x 154, 156 (2d Cir. 2012) ("Failure to apply the correct legal standard constitutes reversible error, including, in certain circumstances, failure to adhere to the applicable regulations."). "If the reviewing court is satisfied that the ALJ applied the correct legal standards, then the court must 'conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision.'" *Coulter*, 2023 WL 3346065, at *1. (quoting *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 447 (2d Cir. 2012) (per curiam)). "If . . . the Commissioner's decision is not supported by substantial evidence or is based on legal error, a court may set aside the Commissioner's decision." *Agolli*, 2023 WL 6050096, at *3.

"The ALJ's failure to develop the record is a threshold issue, because the Court cannot rule on whether the ALJ's decision regarding [Plaintiff's] functional capacity was supported by substantial evidence if the determination was based on an incomplete record." *Craig v. Comm'r of Soc. Sec.*, 218 F. Supp. 3d 249, 267 (S.D.N.Y. 2016) (internal quotation marks omitted); *accord Alvarez v. Comm'r of Soc. Sec.*, No. 14-CV-3542 (MKB), 2015 WL 5657389, at *14 (E.D.N.Y. Sept. 23, 2015). It is well established in the Second Circuit that an ALJ presiding over a social security hearing must "affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (internal quotation marks omitted). This obligation exists "even where, as here, the claimant is represented by counsel." *Merriman v. Comm'r of Soc. Sec.*, No. 14-CV-3510 (PGG) (HBP), 2015 WL

10

5472934, at *18 (S.D.N.Y. Sept. 17, 2015) (quoting *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996)). Furthermore, even if not raised by the plaintiff, "the Court must independently consider whether the ALJ failed to satisfy his duty to develop the record." *Prieto v. Comm'r of Soc. Sec.*, No. 20-CV-3941 (RWL), 2021 WL 3475625, at *10 (S.D.N.Y. Aug. 6, 2021) (collecting cases)).

Lastly, where a plaintiff proceeds *pro se*, the Court must construe the pleadings liberally and interpret them to raise the strongest arguments they suggest. *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (citing *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)).

## DISCUSSION

Plaintiff argues that the ALJ's decision was "contrary to the law" and "not supported by substantial evidence." (Dkt. 1, at ECF 2.) The Commissioner, in opposition, argues that the ALJ properly conducted the 5-step analysis and that the ALJ properly developed the record. (Dkt. 9-1, at 12, 21.) The Court disagrees. For the reasons below, the Court finds that the ALJ failed to adequately develop the record and must remand the case.

### I. ALJ Failed to Make Any Effort to Obtain Medical Opinion from Treating Source

The Act requires that ALJs make all reasonable efforts to obtain medical opinions from a treating source, including sending a follow-up request if the first attempt fails. *See* 20 C.F.R § 404.1512(b)(1). Moreover, "[t]he ALJ's duty to develop the record is . . . heightened 'when a claimant asserts a mental impairment.'" *Pomales v. Acting Comm'r of Soc. Sec.*, No. 22-CV-6009 (AEK), 2023 WL 6240627, at *6 (S.D.N.Y. Sept. 26, 2023) (citation omitted). "Underpinning the heightening of the ALJ's duty is a recognition that the opinions of treating providers are particularly probative in claims involving mental health." *Id.* (quoting *Angelica P. v. Comm'r of Soc. Sec.*, No. 21-CV-9529 (GRJ), 2023 WL 2366931, at *4 (S.D.N.Y. Mar. 6, 2023)). "Although the 'treating physician rule' no longer applies, this important principle persists, as the opportunity

11

to observe and treat the claimant constitutes important 'support' for a medical opinion under the new medical opinion review standard." *Id.* (citation omitted); *see also Fontanez v. Colvin*, No. 16-CV-1300 (PKC), 2017 WL 4334127, at *25 (E.D.N.Y. Sept. 28, 2017) ("Although Plaintiff's medical record is voluminous . . . there is little indication in the record as to Plaintiff's [] capacity to perform work-related activities."); *Skartados v. Comm'r of Soc. Sec.*, No. 20-CV-3909 (PKC), 2022 WL 409701, at *4 (E.D.N.Y. Feb. 10, 2022) (stating that ALJ's duty to develop the record by trying to obtain claimant's treating source opinions "continues to exist even in cases involving claims filed after March 27, 2017, to which the 'treating physician rule' does not apply").

Here, the ALJ failed to obtain a medical opinion from Plaintiff's treating psychiatrist, Connor McCann, who has been providing Plaintiff with psychotherapy services since January 11, 2018. (Tr. 395.) The SSA was aware that Plaintiff's treating psychiatrist was Dr. McCann. Indeed, in a July 14, 2020 "report of contact" form, the SSA noted that Plaintiff "reported that his Psychiatrist is Connor McCann" and that the SSA's "next step" was to "send request to YAI (Connor McCann for updates)." (Tr. 288.) However, the record does not reflect that the SSA ever sent a request. (*See generally* Tr.)

In Plaintiff's October 17, 2020 request for a hearing by an ALJ, he asserted that the "SSA did not review all medical + evaluation (clinical) [records] to make a decision." (Tr. 109.) He then specifically named his "YAI Psychotherapy Report(s)" as "additional evidence" to be submitted for the ALJ hearing. (*Id.*) Moreover, Plaintiff's other medical records in the administrative transcript repeatedly referenced Plaintiff's frequent psychotherapy sessions with Dr. McCann (*see, e.g.*, Tr. 597 (listing future appointment with Dr. McCann on 11/22/2019); Tr. 529 (appointment on 12/13/2019); Tr. 593 (appointment on 2/14/2020), Tr. 589 (appointment on 8/5/2020); Tr. 525 (appointment on 10/14/2020)). Nevertheless, the ALJ did not obtain any of

these records before or after the hearing. In fact, the only treatment record from Dr. McCann in the entire administrative transcript is a document entitled "Initial Treatment Plan" and dated December 28, 2018. (Tr. 475.) The document briefly lists Plaintiff's "presenting problems" and "goals" for treatment, with no assessment of Plaintiff's mental limitations or his ability to work. Tellingly, one of the specific "presenting problems" Plaintiff sought to have treated was his ability to get and maintain a job, expressing "concern over his reaction time and ability to do unfamiliar task[s]." (*Id.*) Plaintiff's other "presenting problems" included difficulty managing his anger, as confirmed by his mother and a co-worker, who had told Plaintiff in the past that Plaintiff often interrupted and was rude to others at work. (*Id.*) Yet, the ALJ never requested a statement as to Plaintiff's functional limitations from Dr. McCann, and instead made a mental RFC determination based primarily on the agency's consultative examiners, past state-agency examiners, and Dr. Papapetrou's autism evaluation (Tr. 22–23)—which appeared to be a one-off referral (Tr. 380 (listing "reason for referral")). This was reversible error.[7] *See Skartados*, 2022 WL 409701, at *4

---

[7] Although ALJ Schriver kept the record open and contacted Plaintiff's non-attorney representative twice for additional records, this was done solely to obtain Plaintiff's *school* records and not additional medical records or opinions from Dr. McCann, which the ALJ never requested. (Tr. 329–31.) Moreover, "[w]hile an ALJ may rely on the claimant's counsel in the first instance to obtain missing treating records, . . . he must nevertheless take 'independent steps to complete the record' if necessary. Thus, courts in our Circuit have frequently found that an ALJ does not satisfy his duty to develop the record by relying on the claimant's attorney to obtain the missing records." *Huma v. Kijakazi*, No. 21-CV-5709 (PKC), 2022 WL 17824049, at *6 (E.D.N.Y. Dec. 20, 2022) (citation and brackets omitted); *see also Newsome v. Astrue*, 817 F. Supp. 2d 111, 137 (E.D.N.Y. 2011) ("The fact that the ALJ requested additional information from the Plaintiff's attorney and did not receive that information does not relieve the ALJ of his duty to fully develop the record."). Moreover, here, Plaintiff was represented only by a non-attorney representative. "Where a claimant is unrepresented, compliance with the minimum requirements of the regulations is not always sufficient to satisfy the ALJ's heightened duty to develop the record." *Jenkins v. Kijakazi*, No. 21-cv-3162 (SN), 2022 WL 4133283, at *4 (S.D.N.Y. Sept. 12, 2022) (quotation marks omitted). "Thus, with *pro se* claimants, 'reasonable efforts' to develop the record include more than merely requesting reports from the treating physicians. It includes issuing and enforcing subpoenas requiring the production of evidence, as authorized by 42 U.S.C. § 405(d)7, and advising the plaintiff of the importance of the evidence." *Id.* (quotation marks omitted). "Further,

(remanding in part because ALJ did not attempt to obtain medical opinion from plaintiff's treating psychiatrist).

In sum, the Court finds that the ALJ failed to adequately develop the record by making no attempt to obtain treatment records or opinions regarding Plaintiff's RFC from his treating psychiatrist. The Court cannot evaluate whether the ALJ's findings regarding Plaintiff's RFC were supported by substantial evidence because the record is incomplete. *Craig*, 218 F. Supp. 3d at 267.

## CONCLUSION

For the above reasons, the Commissioner's motion for judgment on the pleadings is denied. The Commissioner's decision is vacated, and this action is remanded for further administrative proceedings pursuant to the fourth sentence of 42 U.S.C. § 405(g).

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: September 28, 2023
          Brooklyn, New York

---

the ALJ must enter these attempts at evidentiary development into the record." *Id.* (quotation marks omitted).